UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-cr-33 (NEB/LIB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Chongaila Wade Morris, | |
| Defendant. | |

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Chongaila Wade Morris's ("Defendant") Motion to Suppress Statements, Admissions, and Answers. [Docket No. 25]. The Court held a Motions Hearing on July 7, 2021, regarding the parties' pretrial motions.[1]

At the Motions Hearing, the parties requested, and were granted, the opportunity to submit supplemental briefing. Upon the completion of that briefing, Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 25], was taken under advisement.

For reasons discussed herein, the undersigned recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 25], be **DENIED**.

I.   **Background and Statement of Facts**

   A.   **Background**

Defendant is charged with one (1) count of assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 2, 113(a)(3), 1151, and 1153(a). (Indictment [Docket No. 1]).

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 32].

B.  Facts[2]

The record presently before the Court indicates that in the early morning hours of August 14, 2019, Criminal Investigator Leyba was informed by another law enforcement officer of a possible kidnapping, assault, and rape. (Tr. 15).[3] Upon receiving this information, CI Leyba travelled to Indian Health Services to interview the victim. (Tr. 15). The victim informed CI Leyba that her assailant was a male by the name "Chongaila," and she provided CI Leyba with a description of her alleged assailant's vehicle. (Tr. 17–18).

Being unfamiliar with any individual by the name "Chongaila," CI Leyba contacted Red Lake Police Department dispatch to process the name through the system to learn the alleged assailant's full identity. (Tr. 17). Dispatch informed CI Leyba that Defendant was the only person in the system with the name "Chongaila," and CI Leyba was provided with Defendant's last known address. (Tr. 17–19). CI Leyba requested from dispatch a picture of Defendant, and upon viewing said picture, the victim verified that Defendant was the alleged assailant. CI Leyba and Criminal Investigator Paul Kwako then proceeded to the addresses provided by dispatch. (Tr. 18–19).

Upon arriving at Defendant's residence, CI Leyba observed a vehicle matching the description provided by the victim, and after processing the vehicle's license plate number, CI Leyba learned that the vehicle was registered to Defendant. (Tr. 21). Criminal Investigator Paul Kwako and CI Leyba were both attired in boots and khakis with long shirts covering their firearms which were located on their belts. (Tr. 20). As CI Leyba approached the residence's door, Defendant came to the door from inside the residence, and Defendant inquired as to why

---

[2] The facts contained in this section are derived from the testimony of Red Lake Criminal Investigator Ron Leyba (hereinafter "CI Leyba") with the Red Lake Police Department at the July 7, 2021, Motions Hearing, as well as, the Government's exhibits presented in the present case.

[3] Throughout this Report and Recommendation, the Court refers to the transcript of the July 7, 2021, Motions Hearing by the abbreviation "Tr." (Transcript [Docket No. 33]).

CI Leyba was at the residence. (Tr. 21–22). CI Leyba informed Defendant that he needed to speak with Defendant, and CI Leyba asked Defendant to step outside so they could talk. (Tr. 21–24). Defendant stepped outside the residence. (Tr. 21–24).

Once Defendant was outside the residence, CI Leyba asked Defendant to verify his name, and he also asked Defendant where he had been for the previous six to twelve hours. (Tr. 24). Defendant verified his name, and he told CI Leyba that he had been at home for the previous six to twelve hours. (Tr. 24).

CI Leyba then placed Defendant under arrest based on an unrelated Tribal arrest warrant. (Tr. 24). Upon handcuffing Defendant, CI Leyba "advised [Defendant] of his rights." (Tr. 26). CI Leyba then called for a marked patrol vehicle to transport Defendant to the Red Lake Detention Center. (Tr. 26). Upon arrival of the patrol vehicle, CI Leyba informed Defendant of law enforcement's ongoing investigation into the alleged kidnapping, assault, and rape. CI Leyba also told Defendant that they would talk again after Defendant arrived at the Red Lake Detention Center. (Tr. 24–26).[4]

At the Red Lake Police Department, CI Leyba was joined by Special Agent Kyle Gregory from the Federal Bureau of Investigation (hereinafter "SA Gregory"). (Tr. 30–31). CI Leyba then arranged for Defendant to be brought from the Detention Center to a conference room[5] in the Red Lake Police Department so that CI Leyba and SA Gregory could interview Defendant. (Tr. 30).[6]

---

[4] Before leaving the residence but after Defendant was placed under arrest, CI Leyba also asked Defendant for consent to search Defendant's vehicle, and Defendant verbally consented to the search of his vehicle. (Tr. 27–28). CI Leyba left Defendant's presence for a moment to retrieve a consent to search form, and upon CI Leyba's return, Defendant signed the consent to search form. Defendant was then transported by another officer to the Red Lake Detention Center, and Defendant's vehicle was towed to the Red Lake Police Department. (Tr. 26–30).
[5] At the July 7, 2021, Motions Hearing, CI Leyba testified that the conference room was approximately eight feet by sixteen feet with two doorways and four windows like a "standard conference room." (Tr. 30).
[6] The Red Lake Police Department and the Red Lake Detention Center are adjoined buildings. (Tr. 30).

Defendant was brought into the conference room where CI Leyba and SA Gregory were waiting, and CI Leyba began recording the interview. After Defendant entered the conference room, the following exchange took place:

**SA Gregory**: So, um, just to start here, I'm going to go through the advice of rights so we can talk to you. Before we ask you any questions you must understand your rights. Um do you understand that?
**Defendant**: Yeah.
**SA Gregory**: Ok, if you could just give me a verbal yes and if you have any questions at all when I say these just, just let me know and we can discuss it. You have the right to remain silent. Is that a yes?
**Defendant**: Yes.
**SA Gregory**: Ok, anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions.
**Defendant**: Mhmmm.
**SA Gregory**: You have the right to have a lawyer with you during questioning.
**Defendant**: Mhmm.
**SA Gregory**: If you cannot afford a lawyer one will be appointed for you before any questioning if you wish.
**Defendant**: I would like a lawyer present.
**SA Gregory**: Uh, right now during questioning?
**Defendant**: Yeah, 'cuz I really don't know what is going on.
**SA Gregory**: Ok, ok. Uh, so since you've asked for a lawyer we can't discuss anything more with you uh we'll work on getting you an attorney ok. Do you want to call 'em and have 'em pick him up?
**CI Leyba**: Yeah, I'll call 'em.
**Defendant**: What if we proceed . . . without a lawyer?
**SA Gregory**: Uh so if we proceed I can kinda explain why we're here.
**CI Leyba**: You gotta let me know before I call 'cuz once I call 'em they're going to come down here and pick you up, ya know. He just wants—we can explain to you more what's going on but we can't do it without your consent. Do you understand?
**Defendant**: Yeah.
**CI Leyba**: It works both ways. You have to say yes I want to talk to you and then we will be able to tell you what we are alleging with what we have.
**Defendant**: Mhmmm.
**CI Leyba**: But we can't do that if you don't give us the right, so if you're gonna revoke that then we can't talk to you.
**Defendant**: Ok.
**CI Leyba**: So make a decision what you want to do.
**Defendant**: I'd just like to proceed.
**CI Leyba**: You do now?
**Defendant**: Yes, I want to talk to you.
**CI Leyba**: Ok so let him go over this again.

> **SA Gregory:** Ok so you are saying you do not want a lawyer present at this time?
> **Defendant:** Not at this time
> **SA Gregory:** Ok, um sorry I have, have to repeat that one. If you cannot afford a lawyer one will be appointed for you before any questioning if you wish.
> **Defendant:** Mhmmm.
> **SA Gregory:** And uh, if you decide to answer questions now without a lawyer present you have the right to stop answering at any time.
> **Defendant:** Mhmmm.
> **SA Gregory:** So as we go on if you decide you do want a lawyer at that point then you can ask.
> **CI Leyba:** Yeah, you can stop at any time.
> **SA Gregory:** And we'll do what we just were gonna do, we'll stop and uh help ya out there, ok?
> **Defendant:** Yup.
> **SA Gregory:** So, if you could just read this sentence here under the consent out loud.
> **Defendant:** I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.
> **SA Gregory:** And is that true, is that accurate?
> **Defendant:** Yeah.
> **SA Gregory:** Ok. If you wanna just sign there?

(Gov't's Ex. 4 at 0:00–3:00).[7] Defendant then signed the Advice of Rights Form. (Id.; Gov't's Ex. 6).[8] SA Gregory then presented Defendant with a consent to search form requesting permission to search Defendant's vehicle, and Defendant signed the consent to search form. (Gov't's Ex. 4 at 3:00–4:49). SA Gregory, CI Leyba, and Defendant then began discussing the allegations underlying the present Indictment. (Id. at 4:50–36:44). During the interview, Defendant also consented to the taking of a DNA buccal swap. (Id.). The interview lasted approximately 37 minutes. (Id.).

---

[7] Government's Exhibit 4 is an audio recording of the interview with Defendant. At the Motions Hearing, the Government, without objection, offered the audio recording into evidence as Government's Exhibit 4. (Tr. 4–5). Citations to this audio recording are provided in the H:MM format.

[8] Government's Exhibit 6 is a copy of the Advice of Rights Form signed by Defendant at the August 14, 2019, interview. SA Gregory and CI Leyba signed the Form as witnesses. At the Motions Hearing, the Government, without objection, offered the signed Advice of Rights Form into evidence as Government's Exhibit 6. (Tr. 4–5).

**II.   Defendant's Motion to Suppress Statements, Admissions, and Answers. [Docket No. 25].**

Defendant moves this Court for an Order suppressing his August 14, 2019, statements made to SA Gregory and CI Leyba following Defendant's arrest "while in custody at the Red Lake Police Department." (Def.'s Mem., [Docket No. 38], at 1).[9] In support of this request, Defendant argues that these statements were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and his right to counsel. (Def.'s Mem., [Docket No. 38], at 1).

### A. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436,

---

[9] Defendant's Motion originally sought the suppression of the statements Defendant made on August 14, 2019, before his arrest and the statements he made on August 14, 2019, after his arrest, as well as, statements he later made on July 24, 2020. (See, Def.'s Mot. [Docket No. 25]). At the Motions Hearing, however, Defendant withdrew his request to suppress his July 24, 2020, statement based on the Government's representation that it would not use Defendant's July 24, 2020, statement in its case-in-chief. (Tr. 6). At the conclusion of the Motions Hearing, it ostensibly appeared that Defendant sought the suppression of his August 14, 2019, statements before and after his arrest. (See, Tr. 6, 47). Defendant's memorandum in support of his Motion is, however, devoid of any mention of his statements he made prior to his arrest on August 14, 2019. (See, Def.'s Mem. [Docket No. 38]). In fact, Defendant's memorandum specifically notes that he is seeking suppression of "the statement he provided to law enforcement following his arrest in this case." (Def.'s Mem, [Docket No. 38], at 1) (emphasis added). To the extent Defendant still seeks the suppression of his August 14, 2019, statements he made prior to his arrest on August 14, 2019, despite his lack of argument in support thereof, the suppression of these statements is not warranted. "At the end of the day, as the moving party, at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed." United States v. Edwards, 563 F. Supp. 2d 977, 994 (D. Minn. 2008) (citing United States v. Starks, 193 F.R.D. 624, 629 (D. Minn. 2000)), aff'd sub nom. United States v. Bowie, 618 F.3d 802 (8th Cir. 2010). "In a motion to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed." United States v. Quiroz, 57 F. Supp. 2d 805, 822 (D. Minn. 1999), aff'd sub nom. United States v. Vasquez, 213 F.3d 425 (8th Cir. 2000). Defendant's failure to provide any specific factual or legal grounds in support of any request to suppress his August 14, 2019, statements he made prior to his arrest on August 14, 2019, is a sufficient basis to deny his request to suppress his August 14, 2019, statements he made prior to his arrest on August 14, 2019. United States v. Quiroz, 57 F. Supp. 2d 805, 822–23 (D. Minn. 1999), aff'd sub nom. United States v. Vasquez, 213 F.3d 425 (8th Cir. 2000) ("boilerplate motion" to suppress statements denied due to failure to satisfy specificity requirement); United States v. Jones, No. 9-cr-260(1) (DWF/RLE), 2009 WL 4723341, at *4 (D. Minn. Oct. 30, 2009); United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987). Therefore, to the extent Defendant's Motion to Suppress seeks the suppression of Defendant's statements he made prior to his arrest on August 14, 2019, the undersigned recommends that Defendant's Motion Suppress Statements, Admissions, and Answers, [Docket No. 25], be **DENIED**.

444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

"Interrogation under Miranda includes not only express questioning but also its functional equivalent, such as 'any word or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005) (quoting Rhode Island v. Innis, 466 U.S. 291, 300–01 (1980)); see, United States v. McLaughlin, 777 F.2d 388, 390 (8th Cir. 1985). Whether an incriminating response is sought by an officer is determined "from the perspective of the suspect" and not by the officer's actual intent. United States v. Richardson, 427 F.3d 1128, 1132 (8th Cir. 2005).

A defendant may waive their rights, "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. "If the suspect effectively waives his right to counsel after receiving the Miranda warnings, law enforcement officers are free to question him." Davis v. United States, 512 U.S. 452, 458 (1994) (citing North Carolina v. Butler, 441 U.S. 369, 372–76 (1979)). "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation." Id. (citing Edwards v. Arizona, 451 U.S. 477, 484–85 (1981)) (emphasis added).

B. Discussion

As observed above, Defendant seeks suppression of his August 14, 2019, statements made to SA Gregory and CI Leyba following Defendant's arrest on August 14, 2019. In support

7

of this request, Defendant argues that the statements were obtained in violation of his Miranda rights. Specifically, Defendant argues that law enforcement failed to "scrupulously honor" his invocation of his right to counsel, and his subsequent "waiver" of his right to counsel was neither knowing nor voluntary.

A defendant in custody, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him," unless he validly waives his earlier request for the assistance of counsel. Edwards v. Arizona, 451 U.S. 477, 484–85 (1981). This "rigid" rule, Fare v. Michael C., 442 U.S. 707, 719, (1979), embodies two distinct inquiries.

First, Courts must determine whether the defendant properly invoked his right to counsel. See, e.g., Edwards, 451 U.S. at 484–485; Miranda, 384 U.S. at 444–445. Second, if the defendant invoked his right to counsel, Courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. Edwards, 451 U.S. at 485, 486, n. 9; United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005); United States v. Palega, 556 F.3d 709, 716 (8th Cir. 2009).

In the present case, Defendant plainly invoked his right to counsel by stating, "I would like a lawyer present." Thus, the question before the Court is whether Defendant initiated further discussions with the police, and knowingly and intelligently waived the right he had invoked.

1. Invocation

The audio recording of the August 14, 2019, interview of Defendant by SA Gregory and CI Leyba plainly reveals that when Defendant invoked his right to counsel SA Gregory and CI Leyba terminated the interview and SA Gregory informed Defendant that the interview would

not be continuing. SA Gregory also immediately asked CI Leyba to call the jail staff so that Defendant could be returned to the Red Lake Detention Center. While CI Leyba was preparing to call the jail staff so that Defendant could be returned to the Red Lake Detention Center, Defendant asked CI Leyba and SA Gregory, "What if we proceed . . . without a lawyer?". SA Gregory and CI Leyba answered Defendant's question, reiterated to Defendant that they would be unable to continue the interview if he first wanted to talk with an attorney, and limited their responses based on the question Defendant himself had specifically posed to them. Defendant then affirmatively stated that he wished to proceed with the interview without a lawyer.

Under circumstances similar to the present case, this Court has found that it was the defendant who initiated the discussion. See, e.g., United States v. Burns, No. 13-cr-15 (2) (DWF/LIB), 2013 WL 1811323, at *15 (D. Minn. Apr. 11, 2013), report and recommendation adopted, 2013 WL 1811299 (D. Minn. Apr. 30, 2013). In the present case, the record now before the Court, including Defendant's actions and words, demonstrates that Defendant reinitiated the conversation with the officer by demonstrating "a willingness and a desire for a generalized discussion about the investigation." See, e.g., Burns, 2013 WL 1811323, at *15 (quoting Owens v. Bowersox, 290 F.3d 960, 963 (8th Cir. 2002)); United States v. Gil-Garcia, No. 15-cr-2162 (DWF/LIB), 2015 WL 9647668, at *5 (D. Minn. Dec. 7, 2015), report and recommendation adopted, 2016 WL 75054 (D. Minn. Jan. 6, 2016) ("[i]nitiation by a defendant occurs when the defendant evinces 'a willingness and a desire for a generalized discussion about the investigation.'") (alteration in original) (quoting Holman v. Kemna, 212 F.3d 413, 417 (8th Cir. 2000)).

## 2. Waiver

Upon Defendant stating that he wished to proceed with the interview without a lawyer present, SA Gregory finished advising Defendant of his Miranda rights, and Defendant verbally acknowledged both his understanding of his rights, as well as, his willingness to answer questions without a lawyer present. Defendant also signed a written Advice of Rights Form acknowledging that he understood his right, and he was willing to answer questions without a lawyer present.

The record clearly demonstrates that Defendant was read a Miranda warning before he made the statements now at issue, and he both verbally and in writing acknowledged he understood the rights warning. Defendant's verbal acknowledgment that he wished to answer questions without a lawyer present and the Advice of Rights form signed by Defendant represent a waiver of those rights.

 Accordingly, the only issue now remaining before the Court regarding Defendant's August 14, 2019, interview is whether Defendant's waiver of his rights—after his initial invocation of his right to counsel—was voluntarily made knowingly and intelligently. See, United States v. Hull, 419 F.3d 762, 767 (8th Cir. 2005); Edwards, 451 U.S. at 485–86.

The validity of a Miranda waiver requires consideration of two distinct inquiries, namely whether the waiver was voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception[,]" and whether the waiver was knowingly and intelligently made "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "The government has the burden of proving the validity of the Miranda waiver

by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004).

### a. Voluntariness

Courts assess whether a waiver of rights pursuant to Miranda was made voluntarily by considering "the conduct of law enforcement officials and the suspect's capacity to resist any pressure." United States v. Contreras, 372 F.3d 974, 978 (8th Cir. 2004). The United States Supreme Court has previously explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

In determining whether a waiver was made voluntarily, a Court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002). In considering the totality of the circumstances, a Court reviews whether the statement was "extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Sanchez, 614 F.3d 876, 883 (8th Cir. 2010) (internal quotation marks and citations omitted). "More specifically, [a court] consider[s], among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." Id. (citing Sheets v. Butera, 389 F.3d 772, 779 (8th Cir. 2004)).

In the present case, Defendant does not point to any particular factor which renders involuntary his August 14, 2019, rights waiver pursuant to Miranda. Defendant offers no specific argument that SA Gregory or CI Leyba engaged in any specific coercive tactics that caused Defendant's will to be overborne during the interview.

In fact, the Court's independent review of the provided audio recording of the August 14, 2019, interview indicates that neither SA Gregory nor CI Leyba engaged in any coercive tactics nor made any threats or promises to Defendant. See, United States v. Mims, 567 F. Supp. 2d 1059, 1080 (D. Minn. 2008) (holding Miranda waiver voluntary where, among other factors, interview was conducted in a reasonable, conversational tone); United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (concluding no coercive tactics were used where, among other things, officers made no threats or promises to the defendant). Further, the Court's review of the provided audio recording of the interview with SA Gregory and CI Leyba reveals that Defendant spoke willingly and non-defensively with the officers, understood what was being asked of him, and responded appropriately to the questions presented. Moreover, the interview which lasted approximately thirty-seven minutes was not coercive in its duration. See, e.g., United States v. Makes Room, 49 F.3d 410, 415 (8th Cir. 1995) (noting that interrogation lasting more than two hours was not coercive in duration); Jenner v. Smith, 982 F.2d 329, 334 (8th Cir. 1993) (finding six-hour interview did not render confession involuntary).

Based on the foregoing, and under the totality of the circumstances, the Court concludes that Defendant's waiver of his rights on August 14, 2019, was voluntary.

### b. Knowing and Intelligent

Next, the Court must consider whether Defendant's waiver of his rights was knowingly and intelligently made. Vinton, 631 F.3d at 483. The evidence in the record regarding

Defendant's understanding of his rights and presence of mind during the August 14, 2019, interview consists of the audio recording of the interview, the Motions Hearing testimony of CI Leyba, and the Advice of Rights form signed by Defendant.

Defendant fails to point to any particular evidence which he argues demonstrates that his waiver was not knowingly and intelligently made other than his argument that the law enforcement officers failed to honor Defendant's invocation of his right to counsel. This argument, however, fails to acknowledge that it was Defendant who re-initiated further discussions with SA Gregory and CI Leyba.

The Court finds that on the present record, the Government has offered sufficient evidence related to the August 14, 2019, recorded interview of Defendant by SA Gregory and CI Leyba for the Court to determine that Defendant's waiver of his rights after his initial invocation of his right to counsel, but prior to the substantive interview, was knowing and intelligent.

On the record now before the Court, considering the totality of the circumstances, during the August 14, 2019, recorded interview by SA Gregory and CI Leyba, Defendant fully comprehended the nature and scope of the conversation during the August 14, 2019, interview; understood the circumstances of the situation; understood the questions being asked of him; and provided contextually appropriate answers to questions presented. Defendant's coherency, understanding, and comprehension of the situation were demonstrated in Defendant's responses to SA Gregory's and CI Leyba's inquires in which Defendant corrected and clarified factual statements made by both CI Leyba and SA Gregory. Defendant's understanding, coherency, and comprehension of the situation were also demonstrated when Defendant asked SA Gregory and CI Leyba if they wished to take any additional pictures of Defendant's person to show that

Defendant lacked indicia of being involved in a physical altercation, i.e., bruises or scrapes. Further, Defendant's demeanor during the interview remained responsive and cooperative.

Moreover, after SA Gregory read aloud to Defendant a recitation of his Miranda rights, Defendant signed the Advice of Rights waiver form before SA Gregory or CI Leyba began actually interviewing Defendant. The signing of such a form "carries a significant weight in determining whether his waiver was knowing and intelligent." United States v. Gallardo, 495 F.3d 982, 991 (8th Cir. 2007) (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)). The weight to be given to Defendant signing this Advice of Rights form is bolstered by the fact that SA Gregory read aloud to Defendant the rights on the form before handing him the form.[10]

Under the totality of the circumstances—including the consideration of Defendant's own actions and words—the Court concludes that Defendant's waiver of his rights after his initial invocation of his right to counsel but prior to the interview by SA Gregory and CI Leyba on August 14, 2019, was both knowing and intelligent.

Therefore, to the extent Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 25], seeks an Order of this Court suppressing Defendant's statements made during the August 14, 2019, interview by SA Gregory and CI Leyba, the undersigned recommends that Defendant's Motion to Suppress Statements, Admissions, and Answer, [Docket No. 25], be **DENIED**.

---

[10] Even if Defendant had not signed the form, his actions—of answering questions cooperatively—after specifically being advised of his rights and being given time to review the form imply that he understood his rights and he waived those rights. See, Butler, 441 U.S. 369 (holding that a waiver of rights pursuant to Miranda need not be explicit but may be inferred from the actions and words of a person being interrogated and such a waiver "is usually strong proof of the validity of that waiver"). Moreover, nothing in the record now before the Court indicates that Defendant was coerced into signing the Advice of Rights form.

### III.   Conclusion

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 25], be **DENIED**.


Dated: October 12, 2021                              s/Leo I. Brisbois
                                                     Hon. Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.